**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID: 321359
450 7th Avenue, 30th Floor
New York, NY 10123
Direct: (267) 857-0849
ian@dereksmithlaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NOEL HOMYN,<br><br>              Plaintiff,<br><br>  v.<br><br>TECHDOW USA INC.,<br>HEPALINK USA INC.,<br>HEPALINK PHARMACEUTICAL CO., LTD.,<br>SCIENTIFIC PROTEIN LABORATORIES LLC, and<br>CYTOVANCE BIOLOGICS, INC.,<br><br>              Defendants. | Civil Action No.<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT** |

Plaintiff Noel Homyn, by and through her undersigned counsel, alleges upon personal knowledge as to herself and upon information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. Plaintiff Noel Homyn ("Plaintiff") brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., to remedy severe sexual harassment and retaliation occurring during her employment with Defendants.

2. Beginning in October 2024 and continuing through the present, Plaintiff was subjected to persistent and explicit sexual harassment by Bilal Khan ("Khan"), the Chief Executive

1

Officer of Defendant Techdow USA Inc. ("Techdow USA"). Khan's conduct included graphic sexual comments, degrading remarks about Plaintiff's body and appearance, unwanted sexual inquiries, and efforts to isolate and control Plaintiff in the workplace.

3. After Plaintiff complained about the harassment both internally and by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Defendants engaged in escalating retaliation, including rescinding previously approved compensation, stripping Plaintiff of responsibilities, subjecting her to pretextual investigations, and involving senior executives of the parent company in adverse employment actions targeting Plaintiff.

4. Defendants operate as a single integrated enterprise and joint employer, sharing management, legal oversight, human resources functions, and centralized control of labor relations through parent company Hepalink Pharmaceutical Co., Ltd. and its affiliated U.S. entities, and collectively employ well in excess of the fifteen-employee threshold required for Title VII coverage.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 (federal question) and 42 U.S.C. §2000e-5(f)(3) (Title VII).

6. On June 13, 2025, Plaintiff filed a Charge of Discrimination with the EEOC, Charge No. 530-2025-08245, alleging sex discrimination, sexual harassment, hostile work environment, and retaliation in violation of Title VII and the Pennsylvania Human Relations Act. The charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

7. Plaintiff subsequently amended her EEOC Charge on July 30, 2025 and September 17, 2025 to add respondents and supplement the factual record.

8. On December 17, 2025, the EEOC issued a Notice of Right to Sue. Plaintiff files this action within the required ninety-day statutory period.

9. Venue is proper in the Eastern District of Pennsylvania pursuant to 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants conduct business here.

## PARTIES

**Plaintiff**

10. Plaintiff Noel Homyn is an adult female individual residing in Newtown, Bucks County, Pennsylvania.

11. At all relevant times, Plaintiff was employed by Defendants, jointly and severally, serving as Office Manager and Executive Assistant, and later as Commercial Operations Specialist. Plaintiff's day-to-day work was performed at Techdow USA's offices in Langhorne, Pennsylvania.

**Defendants**

12. Defendant Techdow USA Inc. ("Techdow USA") is a Delaware corporation with its principal place of business at 2050 Cabot Blvd W, Suite 200, Langhorne, Pennsylvania 19047. Techdow USA is a pharmaceutical company that sells FDA-approved products throughout the United States. Techdow USA is a wholly owned subsidiary of Hepalink USA Inc.

13. Defendant Hepalink USA Inc. ("Hepalink USA") is a Delaware corporation headquartered in Langhorne, Pennsylvania. Hepalink USA is the immediate parent of

Techdow USA and exercises centralized control over legal, human resources, and management functions for Techdow USA and its other subsidiaries. Hepalink USA's General Counsel, Bradley J. Glass, simultaneously serves as General Counsel for Techdow USA and the other Defendant entities. Mr. Glass directly participated in employment decisions regarding Plaintiff, including communications concerning Plaintiff's compensation, investigation, and employment status.

14. Defendant Hepalink Pharmaceutical Co., Ltd. ("Hepalink China") is a joint stock company incorporated in the People's Republic of China and publicly traded on the Shenzhen and Hong Kong Stock Exchanges. Hepalink China is the ultimate parent entity in the corporate family. Its Chief Executive Officer, Yao Li, directly participated in employment decisions regarding Plaintiff, including communications concerning Plaintiff's compensation, investigation, and employment status.

15. Defendant Scientific Protein Laboratories LLC ("SPL") is a Hepalink affiliate operating in the United States. SPL's employees, including David Knauss and Melissa Syverud, were directly involved in human resources and employment decisions concerning Plaintiff.

16. Defendant Cytovance Biologics, Inc. ("Cytovance") is a Hepalink affiliate operating in the United States. Cytovance shares General Counsel, human resources functions, and centralized management with the other Defendant entities.

17. Defendants collectively operate as a single integrated enterprise and joint employer within the meaning of Title VII. Among other indicia of integration: (a) Bradley J. Glass serves as General Counsel for Hepalink USA, Techdow USA, SPL, and Cytovance simultaneously, as reflected in his email signature block; (b) Yao Li, CEO of Hepalink

China, was copied on and participated in employment communications regarding Plaintiff's compensation, benefits, and a purported investigation; (c) SPL employees were designated to handle HR matters for Techdow USA employees, including Plaintiff; (d) compensation decisions and policy interpretations were driven across entities with Glass as the hub; and (e) the entities share office space, management oversight, and operational control. Together, the Defendant entities employ well in excess of fifteen employees.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment

18. Plaintiff began working for Techdow USA in or about October 2024 as Office Manager and Executive Assistant. Plaintiff was initially placed as a contract worker through Techdow USA's staffing agency, RX2.

19. Khan was hired as Techdow USA's Chief Executive Officer on March 25, 2024. As CEO, Khan was the highest-ranking executive in the U.S. entity, exercised direct and virtually unchecked authority over Plaintiff's day-to-day duties, and served as Plaintiff's direct supervisor and primary point of contact for all HR and escalation matters.

20. Plaintiff was subsequently hired directly by Techdow USA as a full-time Commercial Operations Specialist, effective July 28, 2025.

### B. Hostile Work Environment: Khan's Sexual Harassment

21. From the outset of Plaintiff's employment in October 2024 and continuing through Khan's termination in June 2025, Khan subjected Plaintiff to a pattern of escalating, unwanted, and degrading sexual comments and conduct.

22. Khan repeatedly invited Plaintiff to dinners under the pretense of discussing her career. On both occasions, he instructed her to meet him at his hotel rather than at the restaurant,

despite her clear discomfort and objections. At these dinners, Khan made repeated and explicit sexual comments about Plaintiff's body and appearance.

23. On or about January 17, 2025, during a work call, Khan interrupted a business conversation to ask Plaintiff, "Since you live at your parents' house, how do you 'take care of yourself' without any privacy?"

24. Shortly thereafter, when Plaintiff told Khan she was moving, he commented that she would have "five guys lined up at [her] door at all times" so she could pay her rent.

25. On another occasion in February 2025, while Plaintiff was driving, Khan called and asked, "Do you like to be slapped in the face with a dick?"

26. In March 2025, while Khan was attending a pharmaceutical industry conference (DCAT) in New York City, he called Plaintiff and, unprompted, stated that he had broken his religious fast because he had "jerked off last night and didn't have time to shower, so I can't fast."

27. On April 1, 2025, Khan called Plaintiff and claimed he had gotten a woman pregnant in Chicago and asked if he should "get an abortion and how to do it." He later stated this was an April Fool's joke, which Plaintiff understood as mocking her own prior personal experience.

28. On April 14, 2025, after a company trip to Costco, Khan made repeated sexual comments about Plaintiff's appearance and body, made inappropriate remarks about pornography, and forced Plaintiff to perform physical labor alone while he entered a meeting.

29. Throughout her employment, Khan made a near-constant stream of sexual comments directed at Plaintiff, including but not limited to: whether Plaintiff makes her intimate partners wear condoms; the number of sexual partners she has had; explicit details of

Khan's own sexual history; his opinions on anal sex; and a running commentary on Plaintiff's clothing, body, and social media posts.

30. On multiple occasions, Khan followed Plaintiff on Instagram, called her to critique her appearance, instructed her to make her page private, and commented on her tattoos and attire.

31. Khan dictated what Plaintiff should wear to work-related events, including specific instructions to cover her tattoos and wear certain outfits to the NACDS conference. Leading up to the company's Christmas dinner, he repeatedly instructed Plaintiff on acceptable clothing and prohibited her from wearing specific items, such as leopard print.

32. Khan's conduct extended to other female and minority colleagues, including repeated racist and sexist comments, derogatory impersonations, and objectification of women in the workplace.

33. On or about April 16, 2025, Khan physically kicked Plaintiff's chair and said, "I just want to create a hostile work environment so you will leave."

34. Plaintiff was frequently required to attend non-work-related outings and errands with Khan, despite expressing discomfort, and her work duties were disrupted by his personal demands and sexualized commentary.

35. Plaintiff was routinely humiliated and objectified in front of colleagues and clients. During a professional call regarding DSCSA compliance, Khan interrupted to introduce Plaintiff as his "Personal Assistant," despite her more senior title and responsibilities.

36. Khan repeatedly prevented Plaintiff from performing her duties and denied her autonomy in her role, including basic tasks such as purchasing office supplies, due solely to Khan's desire for control.

37. Khan's behavior included threats and comments designed to remind Plaintiff of her precarious employment status and lack of protection, explicitly stating that she was not technically an employee and would be at risk if he left the company.

38. Khan disclosed confidential employee information to Plaintiff, including salaries, separation agreements, and personal data, and pressured Plaintiff to relay information about coworkers back to him, demonstrating his unchecked power and willingness to weaponize confidential information.

39. Khan involved Plaintiff in acts of retaliation against another employee, directing her to participate in surveillance, reporting, and the ultimate removal of that employee from the company.

**C. Plaintiff's Internal Complaint and Defendants' Response**

40. Plaintiff was never provided with an employee handbook, code of conduct, or sexual harassment policy at any time prior to her formal complaint in 2025. At all relevant times, Techdow USA failed to provide Plaintiff with an effective or independent means of reporting harassment, as all policies and reporting structures funneled complaints directly to her harasser, Khan.

41. Throughout her employment, Plaintiff repeatedly reported and discussed Khan's inappropriate conduct with Paul Cooper, a management-level employee, making clear her discomfort and distress and the lack of any meaningful recourse within the company's reporting structure.

42. On or about April 17, 2025, Cooper brought Plaintiff's concerns to Techdow USA. On April 18, 2025, Plaintiff submitted a formal written complaint under Techdow USA's Sexual and Other Unlawful Harassment Policy.

43. Techdow USA engaged the law firm Reinhart Boerner Van Deuren s.c. to conduct an investigation. The investigation resulted in a finding that Khan's conduct violated the company's Code of Conduct and harassment policy. Techdow USA terminated Khan's employment on June 3, 2025.

**D. Retaliation**

44. Rather than fully remediate the harm caused by Khan's harassment, Defendants subjected Plaintiff to escalating retaliation following both her internal complaint and her EEOC filing.

45. Following Plaintiff's internal complaint and prior to Khan's termination, Khan stripped Plaintiff of core responsibilities, blocked her out of company systems by changing passwords, refused to allow her to purchase office supplies, and sent orchestrated, degrading emails falsely claiming poor performance through May 23, 2025.

46. On June 13, 2025, Plaintiff filed a Charge of Discrimination with the EEOC.

47. Shortly after Plaintiff filed her EEOC charge, Yao Li, CEO of Hepalink China, directed or recommended that Plaintiff's employment be terminated or that adverse action be taken against her, explicitly referencing her legal claims and/or potential litigation. This directive was communicated in writing from Yao Li in China to Paul Cooper, Plaintiff's supervisor, who relayed it to Plaintiff.

48. In August 2025, Defendants rescinded Plaintiff's previously approved $500 monthly car allowance. Plaintiff had relied on this approved compensation in purchasing a vehicle. The car allowance had been approved by both Yao Li and Paul Cooper, and Plaintiff had already received at least one month's payment before it was revoked.

49. Defendants also rescinded Plaintiff's cell phone reimbursement, despite the fact that Plaintiff had been using her personal phone for company business since November 2024 and the company's own expense policy listed phone reimbursement as an eligible expense.

50. These rescissions were communicated through Bradley Glass, General Counsel, who sent employment and benefits emails copying Yao Li, Paul Cooper, and employees of the affiliated entities SPL (David Knauss and Melissa Syverud). The August 2025 email chain, sent under the subject line "RE: Change in Financial Agreement / Investigation," demonstrates both the retaliatory nature of the actions and the integrated control the parent and affiliated entities exercise over Techdow USA's employment decisions.

51. Defendants simultaneously subjected Plaintiff to a purported "investigation" under the company's harassment policy, which served as a pretext to scrutinize Plaintiff's expense submissions. The investigation was initiated after Plaintiff's protected activity, was targeted exclusively at Plaintiff's expenses, and resulted in the rescission of her approved compensation.

52. The retaliatory actions were reasonably likely to deter a reasonable person from engaging in protected activity and constituted materially adverse employment actions.

53. Plaintiff's compensation was selectively targeted. Upon information and belief, other employees who received similar allowances, including an employee named Tommy, were not subjected to the same scrutiny or rescission.

## COUNT I

## HOSTILE WORK ENVIRONMENT – SEXUAL HARASSMENT

## (Title VII, 42 U.S.C. §2000e-2)

## (Against All Defendants)

54. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

55. Plaintiff was subjected to severe and pervasive sexual harassment by Khan, the Chief Executive Officer of Techdow USA and Plaintiff's direct supervisor.

56. The harassment included graphic sexual comments, degrading remarks about Plaintiff's body and appearance, unwanted inquiries about Plaintiff's sexual life, dictating what Plaintiff could wear, physical intimidation, and a deliberate statement of intent to create a hostile work environment.

57. The harassment was based on Plaintiff's sex.

58. The harassment was both subjectively and objectively severe and pervasive, and it altered the terms, conditions, and privileges of Plaintiff's employment.

59. Because the harasser was the CEO of Techdow USA and Plaintiff's direct supervisor, Defendants are strictly and vicariously liable. The Faragher–Ellerth affirmative defense is unavailable for multiple independent reasons: (a) the harasser was the highest-ranking executive in the U.S. entity, to whom the employer had effectively delegated authority; (b) the company's written policies routed complaints to Khan himself, depriving Plaintiff of any effective complaint avenue; (c) Plaintiff's supervisor Paul Cooper failed to take action when notified of the harassment; (d) Plaintiff was never provided with a harassment policy until after she pressed for one; and (e) Defendants retaliated against Plaintiff after she engaged in protected activity, defeating any claim of "reasonable care."

60. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer severe emotional distress, humiliation, loss of professional opportunities, loss of income, and damage to her professional reputation.

## COUNT II

## RETALIATION

### (Title VII, 42 U.S.C. §2000e-3)

### (Against All Defendants)

61. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

62. Plaintiff engaged in protected activity when she: (a) complained internally about sexual harassment on or about April 17–18, 2025; and (b) filed EEOC Charge No. 530-2025-08245 on June 13, 2025, and subsequently amended the charge on July 30, 2025 and September 17, 2025.

63. After engaging in protected activity, Defendants subjected Plaintiff to materially adverse actions, including but not limited to:

    a. stripping Plaintiff of core job responsibilities and blocking access to company systems;

    b. sending orchestrated emails falsely accusing Plaintiff of poor performance;

    c. rescinding Plaintiff's previously approved car allowance and cell phone reimbursement;

    d. initiating a pretextual investigation targeting Plaintiff's expense submissions;

    e. involving senior parent-company executives in escalating adverse actions against Plaintiff; and

  f. a directive from Yao Li, CEO of Hepalink China, recommending termination or adverse action against Plaintiff in explicit reference to her legal claims.

64. These adverse actions were taken because of Plaintiff's protected activity. There is a close temporal connection between the protected activity and the adverse actions, and Defendants' proffered justifications are pretextual.

65. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer emotional distress, economic harm, and damage to her professional standing.

## RESERVATION OF STATE LAW CLAIMS

66. On June 13, 2025, Plaintiff's EEOC charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

67. Because one year has not yet elapsed since the filing of the PHRC complaint, Plaintiff's claims under the Pennsylvania Human Relations Act, 43 P.S. §§951–963 ("PHRA"), are not yet ripe for judicial action.

68. Plaintiff expressly reserves the right to seek leave to amend this Complaint to assert PHRA claims once the one-year PHRC administrative period has expired. Upon such amendment, Plaintiff intends to assert PHRA claims, including individual liability claims against Bilal Khan, Bradley J. Glass, and Yao Li, and claims against all entity Defendants, for sexual harassment, hostile work environment, retaliation, and aiding and abetting in violation of the PHRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Noel Homyn respectfully requests that this Court enter judgment in her favor and against Defendants, and award the following relief:

    a.  Compensatory damages, including back pay, front pay, and lost benefits;

    b.  Damages for emotional distress, pain, and suffering;

    c.  Punitive damages;

    d.  Pre-judgment and post-judgment interest;

    e.  Reasonable attorneys' fees and costs of suit;

    f.  Injunctive and declaratory relief; and

    g.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DEREK SMITH LAW GROUP, PLLC

*/s/ Ian M. Bryson, Esquire*
IAN M. BRYSON, ESQUIRE
450 7th Avenue, 30th Floor
New York, NY 10123
Direct: (267) 857-0849
ian@dereksmithlaw.com
Attorneys for Plaintiff

Dated: March 12, 2026
       New York, NY